IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAREN WELDON, M.D.,

        **Plaintiff,**

v.

ANCHOR HOCKING, LLC and
ANCHOR HOLDINGS, INC.,

        **Defendants.**

1:12-cv-232-WSD

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [26]. Also before the Court is Plaintiff's Motion for Oral Argument on the Pending Summary Judgment Motion [33] ("Motion for Hearing").

### I. BACKGROUND

    A.     Facts[1]

        1.    *Old Anchor's Bankruptcy and New Anchor's Purchase of Assets*

Global Home Products, LLC ("Old Anchor") was a designer, marketer, and manufacturer of consumer products, including a line of glass beverageware,

---

[1] These facts are taken from Defendants' Statement of Undisputed Material Facts [26-9] ("Defs.' SUMF") and Plaintiff's Statement of Additional Undisputed Material Facts [32] ("Pl.s' SAMF"). The facts are undisputed.

bakeware, and home décor items sold under the brand name "Anchor Hocking." (Defs.' SUMF ¶ 4.) On April 10, 2006, Old Anchor filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). (Id. ¶ 5.) In connection with the bankruptcy, Old Anchor's "Anchor Hocking" assets were marketed to potential buyers. (Id. ¶ 8.)

Defendants Anchor Hocking, LLC and Anchor Holdings, Inc. (collectively, "New Anchor") were found to be good faith purchasers who offered the highest and best offer for the assets, and on March 26, 2007, the Bankruptcy Court entered an order (the "Bankruptcy Order") authorizing (i) the sale of substantially all assets of Old Anchor to New Anchor and (ii) the assumption and assignment of Old Anchor's executory contracts and unexpired equipment leases to New Anchor. (Id. ¶¶ 9–10.) The Bankruptcy Order, entered in part pursuant to § 363(f) of the Bankruptcy Code, stated that New Anchor purchased the assets from Old Anchor "free and clear of any liens, claims, interests, and encumbrances." (Id. ¶ 11; see also Aff. J.D. Meadows Ex. A [26-3] at 2.) The Bankruptcy Order further included the following provisions:

- New Anchor purchased the Anchor Hocking assets "free and clear of any claims pursuant to any successor or successor-in-interest theory, including . . . any theories of successor liability, including any theories on successor products liability grounds." (Id. ¶ 12 (omission in original).)

- "The Purchaser is not merely a continuation of the Debtors, there is not

2

substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and the Purchaser." (Id. ¶ 13(a).)

- "No common identity of incorporators, directors or stockholders exists between Purchaser and the Debtors." (Id. ¶ 13(b).)

- "Purchaser is not holding itself out to the public as a continuation of the Debtors." (Id. ¶ 13(c).)

- "The Purchaser is not, as a result of any action taken in connection with the purchase of the Acquired Assets or otherwise, (1) a successor to the Debtors (other than with respect to the Assumed Obligations and any obligations arising under the relevant Assumed Executory Contracts from and after the Closing); or (2) has not, de facto or otherwise, merged or consolidated with or into the Debtors." (Id. ¶ 13(d).)

- "The Purchaser does not constitute a successor to the Debtors or the estates." (Id. ¶ 13(e).)

- "The Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Debtors." (Id. ¶ 13(f).)

- New Anchor "would not have entered into the Agreement and would not consummate the transactions . . . if the sale of the Acquired Assets to the Purchaser . . . were not . . . free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could . . . be liable for any such Encumbrances or other future liabilities arising out of past conduct of the sellers or the Sellers' past ownership of the Acquired Assets," including "Encumbrances" based on "any theories of successor liability, including any theories of successor product liability grounds." (Id. ¶¶ 14–15 (omissions in original).)

The Bankruptcy Order purported to enjoin future claims against New Anchor as follows:

[A]ll persons and entities are forever prohibited and enjoined from

3

commencing or continuing in any manner any action or other proceeding . . . against the Purchaser, its successors and assigns, or the Acquired Assets with respect to any (a) Encumbrance arising under, out of, in connection with or in any way relating to the Sellers, the Purchaser, the Acquired Assets, the operation of the Acquired Assets prior to the Closing of the sale of the Acquired Assets, or (b) Successor Liability. . . .

(Id. ¶ 16 (omission in original).)

Plaintiff was not a creditor of Old Anchor at the time of Old Anchor's bankruptcy, and Plaintiff lacked standing to participate in Old Anchor's bankruptcy proceedings. (Pl.'s SAMF [32] ¶¶ 5–7.) Plaintiff did not receive notice of, and had no knowledge of, Old Anchor's bankruptcy proceedings. (Id. ¶¶ 9–10.)

### 2. *Plaintiff's Claim*

In 2005 or 2006, prior to New Anchor's acquisition of Old Anchor's assets, Plaintiff Karen Weldon ("Plaintiff") purchased an "Anchor Hocking" glass dish at a retail store. (Pl.'s SUMF [32] ¶¶ 1–2.) On December 24, 2010, three years after New Anchor's purchase of the Anchor Hocking assets, the dish exploded in Plaintiff's hands, causing Plaintiff certain injuries. (Id. ¶ 3.)

### B. Procedural History

On December 15, 2011, Plaintiff initiated this action in the State Court of Gwinnett County, Georgia. In her Complaint [1-1], Plaintiff asserts product

4

liability, negligence, and warranty claims against New Anchor arising from the injuries she sustained from the Anchor Hocking dish. On January 23, 2012, New Anchor removed the action to this Court on the basis of diversity jurisdiction.

On June 28, 2012, New Anchor filed its Motion for Summary on the ground that it is not liable to Plaintiff. New Anchor contends that it did not manufacture or sell the dish that injured Plaintiff and that the Bankruptcy Order, pursuant to which it purchased the Anchor Hocking assets, precludes a claim against it based on successor liability. New Anchor's motion is limited to its argument that it is shielded from liability because § 363(f) of the Bankruptcy Code authorized the Bankruptcy Order to transfer the Anchor Hocking assets to New Anchor "free and clear" of successor liability, including "free and clear" of Plaintiff's claims based on the dish explosion and resulting injuries. New Anchor does not argue that successor liability, under the applicable state law, does not otherwise apply in this case.[2]

---

[2] On July 19, 2012, Plaintiff filed her Motion for Hearing seeking a hearing on New Anchor's Motion for Summary Judgment. Local Rule 7.1E provides that motions "will be decided by the court without oral hearing, unless a hearing is ordered by the court." The Court determines that a hearing is not necessary, and Plaintiff's Motion for Hearing is denied.

5

## II. DISCUSSION

### A. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings." Id.

The Court must view all evidence in the light most favorable to the party

opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Analysis

The parties do not dispute that the Bankruptcy Order purported to transfer the Anchor Hocking assets to New Anchor "free and clear" of any successor liability New Anchor may face, under state law, in this action.[3] At issue here is whether the Bankruptcy Court had the authority to enter such an order. New

---

[3] Under Georgia law on successor liability, the purchaser of a business's assets may become liable for the seller's liabilities in certain limited circumstances: "(1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." Bullington v. Union Tool Corp., 328 S.E.2d 726, 727 (Ga. 1985).

7

Anchor argues that § 363(f) of the Bankruptcy Code authorizes the Bankruptcy Order.[4]

Section 363 allows a bankruptcy trustee to sell a debtor's assets outside the ordinary course of business. See generally 11 U.S.C. § 363 (2006 & Supp. V. 2011). Subsection (f) allows the sale to be made "free and clear" of certain "interests" in the assets:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or

---

[4] In its brief, New Anchor argues that Plaintiff cannot "collaterally attack" the factual findings of the Bankruptcy Order. There is no indication that the content or accuracy of the Bankruptcy Order is at issue. New Anchor's Motion for Summary Judgment narrowly frames the issue before the Court as a question of law: whether the Bankruptcy Order's provision purporting to shield New Anchor from successor liability in this action was a proper exercise of authority under § 363(f). The Court, therefore, limits its analysis in this Order to that question, under the facts of this case. The Court does not reach the scope of the Bankruptcy Order as applied to other cases, and the Court does not decide whether New Anchor does, in fact, face successor liability, under Georgia law, in this action.

> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (2006).

Several, but not all, courts have held that an "interest" under § 363(f) may include an *in personam* tort claim. See, e.g., In re Chrysler LLC, 576 F.3d 108, 126 (2d Cir. 2009) (holding that "interests" from which an asset may be sold "free and clear" under § 363(f) include tort claims), vacated as moot, 592 F.3d 370 (2d Cir. 2010). But see Fairchild Aircraft, Inc. v. Cambell (In re Fairchild Aircraft, Inc.), 184 B.R. 910, 917–19 (Bankr. W.D. Tex. 1995) (concluding that § 363(f) applies only to *in rem* interests, not tort claims), vacated as moot, 220 B.R. 909 (Bankr. W.D. Tex. 1998). On this basis, courts have held that a sale under § 363(f) transfers assets free and clear of successor liability for product liability claims *existing* at the time of the sale or prior to confirmation of the final bankruptcy plan. See, e.g., Chrysler, 576 F.3d at 126 (holding that § 363(f) sale extinguished purchaser's successor liability for product liability claims that had accrued prior to the sale).

Regardless of the applicability of § 363(f) to tort claims, no court has held that § 363(f) can extinguish successor liability for a *future* tort claim (e.g., a product liability claim accruing after the asset sale or after the confirmation of a

debtor's bankruptcy plan).[5]  The few courts to have considered this issue directly have held that § 363(f) does not apply to future claims because future claims are not actual "claims" in the bankruptcy, and therefore cannot be "cleared" or discharged, and that future claimants cannot receive the requisite notice of a § 363(f) sale.  See Zerand-Bernal Grp., Inc. v. Cox, 23 F.3d 159, 163 (7th Cir. 1994) (holding that bankruptcy courts lack jurisdiction "to discharge the debts of nondebtors (like [§ 363(f) asset purchasers])" or "to extinguish the rights of third parties, [like] future tort claimants, without notice to them or (as notice might well

---

[5] New Anchor cites several cases that it describes as upholding § 363(f) orders as applied to future claims.  Upon review, all of the cases cited involve only *existing* claims.  See Chrysler, 576 F.3d at 123–27 (holding that § 363(f) order properly cleared *existing* product liability claims from transferred assets and, in the absence of an actual future claim, expressly "declin[ing] to delineate the scope of the bankruptcy court's authority to extinguish future claims"); In re Trans World Airlines, Inc., 322 F.3d 283, 293 (3d Cir. 2003) (holding that § 363(f) order properly cleared existing liabilities); Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.), 428 B.R. 43, 56–58 (S.D.N.Y. 2010) (considering bankruptcy court's authority to transfer assets free and clear of existing tort liabilities); Paris Mfg. Corp. v. Ace Hardware Corp. (In re Paris Indus. Corp.), 132 B.R. 504, 509 (D. Me. 1991) (affirming, as a proper exercise of authority under 11 U.S.C. § 105, bankruptcy court injunction against successor liability tort claim against § 363(f) purchaser where debtor's plan had not yet been confirmed and debts not yet discharged); Volvo White Truck Corp. v Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 949 (Bankr. N.D. Ohio 1987) (holding that "free and clear" sale barred successor liability claims because the claims "arose prior to plan confirmation and [were] within the scope of Debtor's discharge"); Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.), 56 B.R. 186, 189–90 (Bankr. N.D. Ga. 1986) (enjoining successor claim against § 363(f) purchaser *because* claim existed prior to the sale).

be infeasible) any consideration of their interests"); Mooney Aircraft Corp. v. Foster (In re Mooney Aircraft, Inc.), 730 F.2d 367, 375 (5th Cir. 1984) (recognizing that "a sale free and clear is ineffective to divest the claim of a creditor who did not receive notice" and holding that future claims are not "claims" capable of being discharged in bankruptcy and that bankruptcy court, therefore, could not sell assets "free and clear of claims asserted by the victims of an accident which did not occur until five years later").[6]

The Eleventh Circuit has not addressed whether § 363(f) encompasses tort claims or, if it does, whether the statute encompasses future tort claims. The Circuit has held that future tort claims, arising after the confirmation of a debtor's bankruptcy plan, are not "claims" for purposes of bankruptcy and that a bankruptcy court does not have the authority to discharge liability for future tort claims. See Piper, 58 F.3d at 1577 (holding that bankruptcy court could not consider or discharge potential product liability claims arising from debtor's products after confirmation of debtor's bankruptcy). Under this authority, Plaintiff's claim here

---

[6] Mooney was decided under the predecessor to the current Bankruptcy Code, and the court expressly declined to reach the question of whether a future tort claim would constitute a bankruptcy "claim" under the Code. 730 F.2d at 375 n.6. The Eleventh Circuit has held that a future tort claim is not a bankruptcy "claim" under the Code. See Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft), 58 F.3d 1573, 1577 (11th Cir. 1995).

was not capable of being discharged in Old Anchor's bankruptcy.[7] See id. Based on the reasoning of those courts considering the applicability of "free and clear" sales to future claims, the Court concludes that Plaintiff's claim, which was not a "claim" at the time of the § 363(f) sale at issue, could not be "cleared" by the Bankruptcy Order.[8] See Zerand, 23 F.3d at 163; Mooney, 730 F.2d at 375. New Anchor's Motion for Summary Judgment, based solely on the effect of the

---

[7] The record does not indicate when Old Anchor's bankruptcy plan was confirmed. Because the Court draws "all inferences in favor of the non-movant" on summary judgment, the Court assumes for purposes of this Order that Plaintiff's injury occurred after the confirmation. See Garczynski, 573 F.3d at 1165.

[8] New Anchor argues that allowing successor liability to attach to the Anchor Hocking assets is unfair because the liability turns on the fortuity of the timing of Plaintiff's accident. The Court first notes that this Order, regarding only the effect of the § 363(f) sale, does not reach the question of the applicability of successor liability. The Court further notes that the relative fairness of allowing successor liability to attach to a "free and clear" sale, as compared to denying recovery to a plaintiff who lacked the ability to object to the sale or participate in the debtor's bankruptcy, is not properly resolved by the Court. See Fairchild, 184 B.R. at 918–19 ("To be sure, as a matter of policy, perhaps bankruptcy courts should have the power to sell property 'with no strings attached,' both because it would encourage buyers to pay more for estate assets, to the benefit of the process's intended beneficiaries, the creditors, and because it encourages equality of distribution. . . . Other courts have appreciated these concerns as well. But they have also recognized that it was and is for the legislature to pass on this policy choice. It is left to the courts only to give effect to the policy choices already made in the existing statute. For better or worse, it does not appear that the current statute achieves all of these policy aims. The job of the courts is limited to ascertaining what policy choice Congress *did* make, not what policy choice Congress *should have* made." (citations omitted)).

Bankruptcy Order and not on the applicability of successor liability in this action, is required to be denied.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [26] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Oral Argument on the Pending Summary Judgment Motion [33] is **DENIED**.

**SO ORDERED** this 11th day of March, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE